TALIAFERRO *v.* GENESEE COUNTY SUPERVISORS.

1. MUNICIPAL CORPORATIONS—STATUTES—NEW CORPORATION.
   There cannot be at the same time, within the same territory, 2 distinct municipal corporations, exercising the same powers, jurisdiction, and privileges; hence, a new municipality cannot be formed out of, or embrace territory already included within, the limits of an incorporated city, except under statutes providing that on the establishment of the new corporation the corporate existence of the prior corporation shall cease.

2. SAME—NEW CORPORATION INCLUDING EXISTING CORPORATION.
   There is no legal right in a petitioner to an election seeking to incorporate a new city from territory occupied by a duly. incorporated city (CLS 1956, § 117.9).

3. SAME—CONSOLIDATION OF CITIES AND TOWNSHIP AREAS.
   It would be necessary to follow the legislative method of consolidation in order to incorporate the territory of 3 existing cities in addition to all of certain townships and parts of others, thereby affording the electors of each city and unincorporated area opportunity to express approval or disapproval of consolidation (CL 1948, § 117.6, as amended by PA 1957, No 210; CLS 1956, §§ 117.7, 117.9).

4. COSTS—PUBLIC QUESTION—NEW CITY INCORPORATION.
   No costs are allowed in mandamus proceeding to compel the county board of supervisors to hold an election for incorporation as a new city territory presently occupied by 3 cities, all of 3 townships and portions of 5 other townships, a public question being involved (CL 1948, § 117.6, as amended by PA 1957, No 210; CLS 1956, §§ 117.7, 117.9).

Original petition for mandamus by Robert L. Taliaferro against the Board of Supervisors of Gen-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 37 Am Jur, Municipal Corporations § 15.
[3] 37 Am Jur, Municipal Corporations § 21.
[4] 14 Am Jur, Costs § 91; 35 Am Jur, Mandamus § 393.
Amount of attorney's compensation in mandamus proceedings. 143 ALR 787.

esee County to compel vote upon the incorporation of a new city of Flint. Submitted September 19, 1958. (Calendar No. 47,935.) Writ denied October 8, 1958.

*White & Newblatt* (*Stewart A. Newblatt,* of counsel) and *G. Franklin Killeen,* for plaintiff.

*John G. David,* Corporation Counsel (*Cozadd & Shangle,* of counsel), for defendant.

Kelly, J. Petitioner seeks this Court's order compelling the board of supervisors of Genesee county to call "a special meeting and thereat resolve to submit to the qualified electors in the territory sought to be incorporated in the petition herein referred to, the question of the incorporation of said territory at the general election to be held on the 4th day of November, 1958."

The petition addressed to the board (filed June 6, 1958) was entitled "Petition for Incorporation of a New City of Flint." This petition sought to create a new city composed of the present cities of Flint, Mt. Morris and Grand Blanc, and all of the townships of Burton, Genesee and Grand Blanc, and a portion of the townships of Mt. Morris, Flint, Mundy, Thetford and Vienna.

The petition was signed by residents of the various cities and townships, as follows:

| | |
|---|---|
| City of Flint .................. | 1,745 |
| Burton township .............. | 217 |
| Flint township ............... | 166 |
| Genesee township ............. | 125 |
| Grand Blanc township ........ | 75 |
| Mt. Morris township .......... | 120 |
| Mundy township .............. | 14 |
| Thetford township ........... | 14 |
| Vienna township ............. | 12 |
| City of Grand Blanc ......... | 19 |
| City of Mt. Morris .......... | 54 |

On August 12, 1958, the board of supervisors adopted the following resolution:

"That the petition for incorporation of a new city of Flint is hereby declared and found to be not in conformity with the provisions of PA 1909, No 279, as amended.* That the signing thereof is insufficient and that the petition contains incorrect statements.

"Be it further resolved that no further proceedings pursuant to said petition be had."

August 13, 1958, petitioner filed petition for mandamus. On the 21st day of August, 1958, this Court entered the following order:

"It is ordered that said defendant, said board of supervisors of Genesee county, do show cause unto this Court on or before September 9, 1958, why a peremptory writ of mandamus should not issue."

August 20, 1958, defendant board filed its brief, and on September 4, 1958, petitioner moved this Court for an order permitting arguments and briefs to be submitted upon typewritten record and briefs, and in said petition stated:

"That your petitioner has asserted in his original petition that said election upon said question of the proposed incorporation is entitled to be scheduled for the general election of November 4, 1958, and for that purpose ballots must be printed and distributed to the various political subdivisions comprising the area sought to be incorporated, and further, that petitions for charter commissioner must be filed within ample time to determine who has qualified to run for that post and to be placed upon the ballot;—therefore, an extreme emergency exists."

On September 4, 1958, defendant filed motion for the granting of a reasonable time for the preparation

---

* CL 1948 and CLS 1956, § 117.1 *et seq.,* as amended by PA 1957, No 210 (Stat Ann 1949 Rev and Stat Ann 1957 Cum Supp § 5.2071 *et seq.*).—REPORTER.

and filing of briefs. In this motion defendant quoted the following from petitioner's brief:

"It presents to this Court or any other court to which it might have been addressed, question of statutory authority which has far-reaching and spectacular consequences. The importance of the basic legal issue of whether the proposed incorporation may be accomplished under the statute is so great as to require boundless research, inquiry, and preparation. That social, economic, and political consequences of the highest magnitude are involved is undoubtedly recognized by the Court. No one appreciates more than the writer the unfairness of requesting this Court to determine this issue under the pressure of time forced by this mandamus proceeding, which was compelled upon the petitioner through the improper acts of the board in refusing to limit themselves to the authority vested in them by the statute, as to whether or not the statute had been complied with in regard to the form of the petition and the accuracy of the statements therein.

"The improper action of the board has compelled this petitioner to present his mandamus petition without the benefit of presenting evidence in the record as to the reasonableness of the proposed incorporation and the social, economic, political and fiscal necessity for the construction of the statute in the manner which he asserts. The petitioner certainly does not state that the language of the statute should be ignored for the purpose of determining the legality of the incorporation petition, for it is the function of the legislature to foresee the need for such an interpretation. However, to be absolutely candid, the statute is capable and susceptible to both interpretations. *   *   *

"The conduct of the board, as stated above, forces this Court to determine a proper construction of the statute with such speed as may justifiably be said by the Court to prevent a mature reflection upon the problem. The petitioner feels the Court is justified

under the clear language of the statute to order the board to perform its statutory and ministerial function of submitting the question to the electorate and to save the question of whether such a purpose (incorporation) may be accomplished with territory which includes both unincorporated territory and 3 existing municipal corporations.   *   *   *   Therefore, the Court need not decide that which the board seeks to have decided at this time."

Defendant's attorney, under affidavit, states:

"The questions involved are of great magnitude and that representatives of several Michigan municipalities have made inquiry of deponent concerning the same and have expressed the desire of filing *amicus curiae* briefs."

On the 9th day of September, 1958, this Court ordered that "defendant's application for an extension of time to file brief and appendix is denied. Plaintiff's motion for leave to submit case on typewritten briefs and on the pleadings and briefs heretofore filed is granted. It is further ordered that further typewritten briefs by the parties shall be filed with the clerk of this Court and served on opposing counsel on or before September 19, 1958, not less than 10 copies of each such brief to be filed, and that on said date the case shall be submitted for determination. It is further ordered that on or before October 10, 1958, the parties hereto shall cause to be filed in accordance with the Court Rule pertaining thereto* printed copies of their final briefs and a joint appendix, or appendices, containing the pleadings in the cause."

CL 1948, § 117.6, as last amended by PA 1957, No 210 (Stat Ann 1957 Cum Supp § 5.2085), reads, in part, as follows:

---

* Court Rule No 70, § 2 (1945), as amended October 30, 1956.   347 Mich xxix.—REPORTER.

"Cities may be incorporated or territory detached therefrom or added thereto, or consolidation made of 2 or more cities or villages into 1 city, or of a city and 1 or more villages into 1 city, or of 1 or more cities or villages together with additional territory not included within any incorporated city or village into 1 city, by proceedings originating by petition therefor signed by qualified electors who are freeholders residing within the cities, villages or townships to be affected thereby, to a number not less than 1% of the population of the territory affected thereby according to the last preceding United States census, * * * which number shall be in no case less than 100, and not less than 10 of the signatures to such petition shall be obtained from each city, village or township to be affected by the proposed change."

CLS 1956, § 117.7 (Stat Ann 1957 Cum Supp § 5.2086) provides in part:

"Said petition shall accurately describe the proposed boundaries of the city, or of the territory to be annexed thereto or detached therefrom, and if the purpose is to incorporate a new city, it shall represent that the territory described contains not less than 2,000 inhabitants and an average of not less than 500 inhabitants per square mile."

CLS 1956, § 117.8 (Stat Ann 1957 Cum Supp § 5.2087) reads, in part, as follows:

"Said petition shall be addressed to the board of supervisors of the county in which the territory to be affected by such proposed incorporation, consolidation or change of boundaries is located, and shall be filed with the clerk of said board not less than 30 days before the convening of such board in regular session, or in any special session called for the purpose of considering said petition, and if, before final action thereon, it shall appear to said board or a majority thereof that said petition or the signing thereof does not conform to this act, or contains

incorrect statements, no further proceedings pursuant to said petition shall be had, but, if it shall appear that said petition conforms in all respects to the provisions of this act, and that the statements contained therein are true, said board of supervisors shall, by resolution, provide that the question of making the proposed incorporation, consolidation or change of boundaries shall be submitted to the qualified electors of the district to be affected at the next general election, occurring in not less than 40 days after the adoption of such resolution, and if no general election is to occur within 90 days, said resolution may fix a date preceding said general election for a special election on such question."

Petitioner's statement of questions involved (No 1) states:

"Does the petition conform to the provisions of CL 1948, § 117.6, as amended (Stat Ann 1957 Cum Supp § 5.2085), which requires such petition to be signed by qualified electors who are freeholders 'residing within the cities, villages or townships affected thereby to a number not less than 1% of the population of the territory to be affected thereby' when the petition contains only 15 signatures from residents of Thetford township, which has a population of 2,404, 13 signatures from residents of Vienna township, which has a population of 3,993, and 17 signatures from residents of Mundy township, which has a population of 2,694?

"Petitioner says: Yes; that the 1% requirement of the statute applies to the total number of signatures upon the petition, only, and not to the cities, villages, and townships on an individual basis."

To incorporate the new city of Flint and carry petitioner's plan to fruition, 3 incorporated cities would be assimilated with an area and population as follows:

1. Flint, with a land area of approximately 29.9 square miles, and a population of 163,143;

2. Grand Blanc, with a land area of approximately 2 square miles, and a population of 998;

3. Mt. Morris, with a land area of approximately 1 square mile, and a population of 2,890.

Defendant insists that the incorporation of the new city cannot be accomplished in the manner proposed and can only be accomplished by a consolidation. Defendant states:

"If a petition were filed with the board of supervisors praying for *consolidation* of the territory described in the present petition, and an election were to be had thereon, the electors and freeholders of each local government would each have to vote in favor of the consolidation before any consolidation could be effected, and if the qualified electors of any 1 of the governmental units voted in the negative, then the entire consolidation would fail as the question voted upon would be the consolidation of the entire group of governmental units.

"It is apparent that the proponents of the petition filed with the supervisors are well aware of the foregoing fact and are well aware that they could never get the approval of each of the governmental units to the consolidation and it is likewise quite obvious that for this reason they have not set forth in their petition that they are seeking a consolidation but they (for their purpose) conveniently state that they are seeking the *"incorporation"* of a city and are attempting by such maneuver to compel the electors and freeholders residing in the 8 townships and the cities of Grand Blanc and Mt. Morris to be included into 1 overall government against their will."

Petitioner answers defendant's contention, by stating:

·"The board asserts that the statute means that the only method by which an area which contains more than 1 city can be made into a larger city is by 'consolidation.' As stated, this is merely an assertion. The statute is not clear on this point and that which

the board says is a proper conclusion from the language is only 1 interpretation thereof. It is equally susceptible to the interpretation that a new city may be created from '1 or more cities or villages together with additional territory not included within any incorporated city or village' by incorporation. * * *

"It is urged by the board that this proposed incorporation is invalid because it has never been accomplished in Michigan. This is certainly a very poor reason upon which to base a conclusion that it cannot be done. It is also possible that it has never been done because the problems of a large, urban complex have never faced us before in the light of modern thought and concepts of governmental powers over health and welfare. The Court should not bind itself to the nineteenth century concepts so long as the statute may reasonably justify modern interpretations which advance the health and welfare of the people."

The home-rule act (PA 1909, No 279, as amended) provides in section 1 thereof (CL 1948, § 117.1 [Stat Ann 1949 Rev § 5.2071]) that "each organized city shall be a body corporate," and further provides in section 2 (CL 1948, § 117.2 [Stat Ann 1949 Rev § 5.2072]) that "each city now existing shall continue with all its present rights and powers until otherwise provided by law."

The city of Flint was in existence before the home-rule act of 1909, but the cities of Mt. Morris and Grand Blanc were incorporated under the provisions of the 1909 act, and have existed as cities from 1930 to the present time.

CLS 1956, § 117.14a (Stat Ann 1957 Cum Supp § 5.2093[1]) provides for the dissolution of cities, or the surrender of charters, but no proceedings have ever been held to terminate the charters of Mt. Morris or Grand Blanc.

We held in *Cain* v. *Brown,* 111 Mich 657, that a municipal corporation once created cannot be dis-

solved or cease to exist except by legislative provision or consent, and failure of the people of a village for a term of years to hold an election does not effect a dissolution.

In the case of *Attorney General, ex rel. Hudson,* v. *Common Council of Detroit,* 164 Mich 369 (decided February 1, 1911) we held (pp 377, 388):

"At the very outset of the act it is provided:

" 'Sec. 2. Each city now existing shall continue with all its present rights and powers until otherwise provided by law.'

" 'Until otherwise provided by law' can scarcely be said to refer to subsequent sections of the act itself, but must be held to refer to some future law. * * * This construction is in harmony with the letter and spirit of the Constitution (1908) to provide a municipal constitution for all cities, in conformity with the fundamental principles of which and the Constitution and general laws of the State each city may govern itself according to the judgment of its electorate."

62 CJS, Municipal Corporations, § 85, p 202, states:

"There cannot be at the same time, within the same territory, 2 distinct municipal corporations, exercising the same powers, jurisdiction, and privileges. Hence, a new municipality cannot be formed out of, or embrace territory already included within, the limits of an incorporated town, village, or city, except under statutes providing that on the establishment of the new corporation the corporate existence of the prior corporation shall cease."

CLS 1956, § 117.9 (Stat Ann 1957 Cum Supp § 5.2088) reads:

"Provided, however, That when a territory is proposed to be incorporated as a city only the residents of the territory to be incorporated shall vote on the question of incorporation. * * * This section

shall not be construed so as to give any city the authority to proceed hereunder to attach territory from any other city unless the question relative thereto has been voted upon by the voters of the entire cities affected."

We commend counsel for the petitioner and defendant for the complete and carefully prepared briefs they have submitted. We see no necessity for additional briefs. We cannot agree with petitioner that we should order the election to be held and subsequent thereto determine whether said election met statutory requirements.

In determining legislative intent from the statutes, we conclude:

(1) That it was not the legislative intent that petitioner had the legal right to an election seeking to incorporate territory into a new city from territory occupied by a duly incorporated city;

(2) That to achieve a result such as is sought by petitioner, the legislative method of consolidation would have to be employed, giving to the electors of the several cities and unincorporated areas the opportunity, by a majority vote in each city and unincorporated area, to express approval or disapproval of consolidation;

(3) That if the legislature had intended otherwise, said intent would have been expressed in clear and definite language.

There is no necessity of determining the other questions presented by petitioner.

Petitioner's prayer for writ of mandamus is denied. No costs, a public question being involved.

DETHMERS, C. J., and CARR, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.